UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW DOUGLAS REID and ) <br> SHAWN REID, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> K-MART CORPORATION, ) <br>  ) <br> Defendant. ) | CV 00-BU-2261-S |

## Memorandum Opinion

Now before the Court in the above-styled action is a motion for summary judgment (Doc. 21), filed on June 4, 2001 by the sole remaining defendant, K-Mart Corporation ("K-Mart"). The parties have filed evidence and briefs in support of their respective positions on the motion, which is now ripe for decision. Upon careful consideration, the Court concludes that K-Mart's motion for summary judgment is due to be GRANTED IN PART AND DENIED IN PART.

### I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists

and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299).

## II. BACKGROUND[1]

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the

On or about December 7, 1998, Plaintiff Andrew Reid ("Andrew") purchased a Wahoo Chief Ladder Stand (the "ladder stand") from the K-Mart store located in Gardendale, Alabama. The ladder stand, a metal structure affixed to a tree and is used in deer hunting, was manufactured by Wahoo Hunting Products, Inc. ("Wahoo"). On or about September 11, 1999, Andrew and his wife, Plaintiff Shawn Reid ("Shawn") (hereinafter collectively "Plaintiffs"), erected the ladder stand onto a tree located in their back yard. Andrew, who weighed about 210 pounds, then began to climb the ladder stand. But, as he got near the top, the metal ladder bent and collapsed. Andrew fell to the ground and suffered severe injuries.

On August 14, 2000, Plaintiffs brought this suit against both Wahoo and K-Mart (hereinafter collectively "Defendants"), invoking this Court's subject matter jurisdiction under 28 U.S.C. § 1332.² Andrew sought to recover based upon losses stemming from his physical injuries while his wife asserted derivative claims for loss of services. In Count I of their complaint, Plaintiffs claimed that Wahoo and K-Mart were liable under traditional tort principles of negligence and wantonness. In particular, Plaintiffs alleged that Wahoo negligently or wantonly designed, manufactured and sold the ladder stand purchased by Andrew, while K-Mart negligently or wantonly "distributed, sold, transferred and otherwise placed the defective [ladder stand] in the stream of commerce." Complaint at ¶ 13-14. Plaintiffs further alleged that each Defendant also negligently or wantonly failed to

---

actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

²28 U.S.C. § 1332(a)(1) provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

provide proper instructions as to the use of the ladder and negligently or wantonly failed to warn of the inherent dangers of the ladder stand. Complaint ¶ 15. In Count II, Plaintiffs advanced claims against Defendants founded upon the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Plaintiffs alleged that the ladder stand was defective at the time it left the possession and control of Defendants, and that the actions of K-Mart in selling, distributing, or marketing the product in a defective condition caused or contributed to cause Plaintiff's injuries.

K-Mart was served and answered the complaint. However, Plaintiffs were unable to effect service upon Wahoo. Thereafter, Plaintiffs filed a motion to dismiss Wahoo without prejudice. The Court granted that motion, leaving K-Mart as the sole remaining defendant. Accordingly, it is the acts and omissions of K-Mart that have become the focus of the case.

Andrew readily admits that he has no knowledge of what, if anything, actually happened to the ladder stand before he ultimately purchased it at K-Mart. However, there are several indications from the evidence that the box containing the ladder stand in question had been opened by someone before he bought it. First, Andrew suggested at his deposition that when he purchased the ladder stand it was contained in a box that appeared to have been re-sealed with red tape. Second, it seems that after the accident occurred, Andrew purchased another ladder stand of the identical make and model. At that time, he discovered an instruction manual and videotape included in the second box that had been absent from the box containing the original ladder stand. Likewise, Andrew stated that the original ladder stand required less assembly than the second one he purchased. The first one, he explained, "appeared to be further along than the second one," as it had

been "[p]ut together more," and there were "a lot more" bolts and nuts loose in the second box.

During his deposition, Andrew made a number of acknowledgments relating both to the absence of the instructional manual and videotape as well as to the more complete, partial assembly of the ladder stand from which he fell. Andrew professed that he was both an engineer and an experienced hunter and was quite familiar with a number of different types of tree and ladder stands. He also indicated that he was able to assemble the original ladder stand without any problem using the picture on the box as a guide. Further, after having reviewed the manual and the video, he stated that he found that the information they contained was minimal and that it would not have been of additional assistance to him. Indeed, Andrew maintained that he believed that he had, in fact, put the ladder stand together properly, and he stated that none of "those areas" requiring assembly "appear[ed] to have anything to do with where [the ladder] broke."

### III. DISCUSSION

Plaintiffs have asserted three types of claims against K-Mart: negligence, wantonness, and claims under the AEMLD. As a federal court sitting in diversity, this Court is bound to apply the law of the forum with regard to Plaintiffs' state law claims. See Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 774 (11th Cir. 2000). K-Mart argues that it is entitled to summary judgment on each of Plaintiffs' claims. These claims are addressed in turn.

#### A. "Traditional" Negligence

"Negligence" is generally defined under Alabama law as "the failure to do what a reasonably prudent person would have done under the same or similar

circumstances, or the doing of something which a reasonably prudent person would not have done under the same or similar circumstances." Elba Wood Products, Inc. v. Brackin, 356 So. 2d 119, 122 (Ala. 1978). In order to prove a claim of ordinary negligence, a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff. Lowe's Home Ctrs., Inc. v. Laxson, 655 So. 2d 943, 945-46 (Ala. 1994). Thus, in order to recover under a traditional negligence theory for an injury caused by a product sold by a defendant retailer, the plaintiff would have to affirmatively prove some lack of due care on the part of the retailer, and that such lack of due care was the proximate cause of the injury sustained. See, e.g., Kroger Co. v. Goodhew, 281 Ala. 637, 206 So. 2d 882 (1968).

Plaintiffs argue that they might recover against K-Mart under such traditional negligence principles based upon the fact that the box containing the ladder stand from which Andrew fell did not include the instruction manual or videotape. Plaintiffs assert that K-Mart repackaged and resealed the product without these materials, thus depriving Andrew of assembly instructions and required warnings concerning the dangers inherent in the ladder stand. Plaintiffs argue that each model of tree stand "has unique features likely rendering it imminently dangerous even when used by experienced hunters if used without proper instruction and warning." Accordingly, Plaintiffs contend that K-Mart had to provide such instruction and warning regardless of Andrew's admitted experience as a hunter and tree stand user.

For purposes of this claim, the Court will assume that prior to Andrew's purchase of the ladder stand, a K-Mart representative opened the box containing

it and removed the instructional manual and videotape. The Court will further assume that such constituted a breach of the standard of care. Nonetheless, the Court concludes that summary judgment is warranted on this claim based on the evidence demonstrating a lack of proximate causation. "A negligent- or wanton-failure-to-warn claim cannot be submitted to a jury unless there is substantial evidence that the [alleged] inadequate warning would have been read and heeded and that it would have prevented the accident." Sears, Roebuck & Co. v. Harris, 630 So. 2d 1018, 1030 (Ala. 1993). Andrew stated that he believed that he had assembled the ladder stand correctly based upon the picture on the box and his prior experience with ladder stands. And more importantly, he indicated after reviewing the manual and the video that they contained no information that would have caused him to do anything differently. Thus, the evidence shows, without dispute, that it was not the absence of the manual or the video that caused the accident. Accordingly, K-Mart's motion for summary judgment is due to be granted as it pertains to this claim.

### B. The AEMLD

In the companion cases of Casrell v. Altec Industries, Inc., 335 So. 2d 128 (Ala.1976), and Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976), the Alabama Supreme Court modified traditional negligence principles in the products liability context through the establishment of the AEMLD. In so doing, the Alabama Supreme Court declined to adopt strict liability; rather, it adhered to the concept of fault by holding that a manufacturer, supplier, or seller's marketing of a product that is not reasonably safe when applied to its intended use in the usual and customary manner constitutes negligence as a matter of law. Casrell, 335 So.

2d at 132. Thus, even if a seller has exercised all possible care in the preparation and sale of his product, a plaintiff may establish liability under the AEMLD by proving: (1) that the injury was caused by a product defect, i.e., a condition that made the product unreasonably dangerous to the ultimate user or consumer; (2) that the seller was engaged in the business of selling such a product; and (3) that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold. See Bell v. T.R. Miller Mill Co., Inc., 768 So. 2d 953, 957 (Ala. 2000). See also Goree v. Winnebago Industries, Inc., 958 F.2d 1537, 1541 (11th Cir. 1992).

K-Mart appears willing to assume, at least for purposes of its motion for summary judgment, that Plaintiffs can establish a prima facie case under the AEMLD. However, K-Mart points out that, under the AEMLD, the seller of a defective product that causes injury may prove, as an affirmative defense, that there is no causal relation in fact between his activities in handling the product and its defective condition.[3] Atkins, 335 So. 2d at 143. To establish this defense, the seller must show: (1) that it is in the business of either distributing or processing for distribution finished products; (2) it received a product already in a defective condition; (3) it did not contribute to this defective condition; and (4) it had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer. Id.; Allen v. Delchamps, Inc., 624 So. 2d 1065, 1068-69 (Ala. 1993); Consolidated Pipe &

---

[3]The Atkins court was careful to emphasize that the affirmative defense of no causal relation should "not be confused with the burden which rests upon the plaintiff to prove that his injuries and damages were the proximate result of the defective condition of the product." 335 So. 2d at 143 n.4.

Supply Co. v. Stockham Valves & Fittings, Inc., 365 So. 2d 968, 971 (Ala. 1978). It is upon the basis of this defense that K-Mart argues that it is entitled to summary judgment.

K-Mart expressly, and correctly, acknowledges that it bears the burden to show that there is no genuine issue of material fact regarding the "no causal relation" defense. See Rodgers v. Shave Mfg. Co., Inc., 993 F.Supp. 1428, 1436 (M.D. Ala. 1998). Nonetheless, K-Mart repeatedly suggests that summary judgment is appropriate because Plaintiffs cannot point to any act or omission on the part of K-Mart demonstrating a lack of due care, based on the fact that Andrew admits that he does not know what happened to the ladder stand prior to his purchasing it. However, while Plaintiffs may not be able to show any lack of due care on the part of K-Mart, they need not make such a showing under the AEMLD. For purposes of that doctrine, negligence on the part of K-Mart is established simply by virtue of the fact that it sold Andrew a defective product, which K-Mart does not at this point dispute. Under Fed. R. Civ. P 56(c), summary judgment is warranted where a movant is able to show that a non-moving party bearing the burden of proof at trial on a particular claim will not be able to meet that burden, even if the movant does not actually negate an element of the non-moving party's claim. See Clark v. Coats & Clark, Inc., 929 F.2d at 608. However, K-Mart would have the burden of proof at trial to prove the elements of the affirmative defense of no causal relation; pointing to evidence indicating that Plaintiffs will not be able to show what happened to the ladder stand before purchase does not establish much of anything as far as that defense is concerned.

More on point, K-Mart argues in its brief and reply that it did not cause or

contribute to the defective condition of the ladder stand and that it did not and could not have reasonably known that any defect was present. However, a motion for summary judgment is decided on the basis of admissible evidence presented, and assertions in a brief are not admissible evidence. See Helmich v. Kennedy, 796 F.2d 1441, 1443 (11th Cir. 1986); Direct Media Corp. v. Camden Tel. and Tel. Co., Inc., 989 F.Supp. 1211, 1217 (S.D. Ga. 1997). Regardless of whether K-Mart is in the business of distributing finished products, the Court concludes that there is no evidence in the record tending to show one way or the other that K-Mart received the ladder stand already in a defective condition; that K-Mart did not contribute to this defective condition; and that K-Mart had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer. The Court has not been presented with any affidavit or deposition testimony from any K-Mart representative weighing in on any of these issues. K-Mart has not offered any evidence indicating the condition of the ladder stand upon K-Mart's receiving it nor what K-Mart did or did not do between the time it received it and the time it sold it to Andrew. Moreover, this is not a case where the evidence would suggest that a retailer merely sold a product to a consumer in an unopened package in the identical condition it was received from a supplier or manufacturer. See, e.g., Fleming Farms v. Dixie Ag Supply, Inc., 631 So. 2d 922, 928 (Ala. 1994); Wakeland v. Brown & Williamson Tobacco Corp., 996 F.Supp. 1213, 1219 (S.D. Ala. 1998); Charpie v. Lowes Home Centers, Inc., 930 F.Supp. 1498, 1501 (M.D. Ala. 1996). To the contrary, the evidence actually indicates that the box containing the ladder stand in question was, in fact, opened by someone prior to Andrew's purchasing it from K-Mart and that

it had even been partially assembled by someone. Under the AEMLD affirmative defense of no causal relation, it is not the Plaintiffs who are responsible to show that K-Mart did something to create or contribute to a defect that caused injury; it is K-Mart that must affirmatively prove that it did <u>not</u> do anything to create or contribute to a defect. Put simply, at this point in the proceedings, it is not clear at all what K-Mart did or did not do in connection with the ladder stand. It may be that K-Mart will be able to prove the defense of no causal relation at trial. However, K-Mart has failed to carry its initial burden as the movant for summary judgment to show that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Accordingly, K-Mart's motion for summary judgment is due to be denied as it pertains to Plaintiffs' AEMLD claim.

### C. Wantonness

"Wantonness" is defined by § 6-11-20(b)(3), Ala. Code 1975, as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." The Alabama Supreme Court has likewise stated that "[w]antonness involves the '<u>conscious</u> doing of some act or the omission of some duty, while <u>knowing</u> of the existing conditions and being <u>conscious</u> that, from doing or omitting to do an act, injury will likely or probably result.' " <u>Hobart Corp. v. Scoggins</u>, 776 So.2d 56, 58 (Ala. 2001) (quoting <u>Alfa Mut. Ins. Co. v. Roush</u>, 723 So. 2d 1250, 1256 (Ala. 1998)) (emphasis in <u>Scoggins</u>). Thus, " 'wantonness' is not merely a higher degree of negligence; instead, it is a 'qualitatively different tort concept of actionable culpability.' " <u>Cessna Aircraft Co. v. Trzcinski</u>, 682 So. 2d 17, 19 (Ala. 1996). While a party claiming wantonness does not have to prove an intent to injure, the Alabama Supreme Court has held that wantonness requires

proof of some degree of conscious culpability. Id.

In this case, K-Mart has presented evidence showing that Plaintiffs will be unable to show any affirmative misconduct on the part of K-Mart, aside from potentially placing a defective product in the stream of commerce. Such product placement is enough to possibly prevail against K-Mart on an AEMLD claim based upon a modified negligence standard, but it falls far short of reasonably indicating that K-Mart consciously disregarded a known or likely risk of harm. See Trzcinski, supra; Flagstar Enterprises, Inc. v. Davis, 709 So. 2d 1132, 1142 (Ala. 1998). Accordingly, the Court will grant K-Mart's motion as it pertains to Plaintiffs' allegations of wanton misconduct.

## IV. CONCLUSION

Based on the foregoing, K-Mart's motion for summary judgment (Doc. 21) is due to be GRANTED IN PART AND DENIED IN PART. The motion is due to be granted insofar as it concerns (1) Plaintiffs' claims alleging wantonness and (2) their negligence claims based on the absence of the instructional manual and videotape in the box containing the ladder stand. Accordingly, those claims will be dismissed with prejudice, as the Court has determined that there is no genuine issue of material fact and that K-Mart is entitled to judgment as a matter of law. However, because the Court has concluded that K-Mart has failed to present admissible evidence tending to establish the elements of the no causal relation defense, the motion for summary judgment is due to be denied to the extent it pertains to Plaintiffs' claims otherwise founded upon the AEMLD. A separate order will be entered.

**IT IS SO ORDERED**, this \_\_11th\_\_ day of July, 2001.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE